**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| HARMINDER DHALIWAL, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 4:21-CV-00056-SDJ- |
| v. | § | CAN |
| | § | |
| MERIDIAN SECURITY INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is Plaintiff Harminder Dhaliwal's Motion for Summary Judgment

[Dkt. 16] and Defendant Meridian Security Insurance Company's Response to Plaintiff's Motion

for Summary Judgment and Contingent Motion to Set Aside Appraisal Award [Dkt. 22].

**INTRODUCTION**

Plaintiff Harminder Dhaliwal's ("Plaintiff") suit arises out of damage to his residence

("Property"), allegedly caused by a wind and hailstorm in February 2019, while insured under a

homeowner's policy ("Policy") issued by Defendant Meridian Security Insurance Company

("Defendant").  Plaintiff filed a claim under the Policy, but the Parties were unable to reach an

agreement regarding the alleged loss to the Property resulting from the storm damage.  As such,

Plaintiff invoked the appraisal clause in the Policy.  The Parties' appraisers failed to agree on an

umpire, and on June 24, 2019, Plaintiff filed an Application for Appointment of Umpire in the

16th Judicial District Court of Denton County, Texas.  The state court appointed an umpire.

An appraisal was conducted, and one or more umpire's appraisal awards were issued.  Defendant

refused to pay.  On December 22, 2020, Plaintiff filed his Second Amended Petition, the live

pleading in this lawsuit [Dkts. 1 at 1; 4].  The Second Amended Petition asserts claims premised

on the disputed insurance claim and appraisal award against Defendant for (1) breach of contract, (2) violations of the Texas Insurance Code, and (3) a declaration pursuant to the Texas Declaratory Judgment Act [Dkt. 4 at 13-20].  Defendant removed this suit to the Eastern District of Texas on January 21, 2021 [Dkt. 1].

**_Motion for Summary Judgment_**

On February 22, 2022, Plaintiff filed a Motion for Summary Judgment urging "that the amount of [Plaintiff's] loss/damages was properly determined by and through Appraisal under the Policy and that the amount of [Plaintiff's] loss/damages so determined [] is binding on the [P]arties" [Dkt. 16 at 2].  On March 22, 2022, Defendant filed a Response and Contingent Motion to Set Aside the Appraisal Award, alleging, among other arguments, that the appraisal award "contains numerous acknowledged errors which render it a mistake" and thus unenforceable under Texas law [Dkts. 22; 23].  Plaintiff opposes the Contingent Motion to Set Aside the Appraisal Award [Dkt. 24].  On May 31, 2022, United States District Judge Sean D. Jordan referred this case to the undersigned for all pretrial proceedings [Dkt. 29].

## SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses to help "secure the just, speedy and inexpensive determination of every action." *Nat'l Cas. Co. v. Kiva Const. & Eng'g, Inc.*, 496 F. App'x 446, 449 (5th Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)).  Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Certain Underwriters at Lloyd's, London v. Axon*

*Pressure Prod. Inc.*, 951 F.3d 248, 255 (5th Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The substantive law will identify which facts are material. This means only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Gibson v. Collier*, 920 F.3d 212, 219 (5th Cir. 2019) (citing *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019)) (cleaned up). The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Bucklew v. Precythe*, 139 S. Ct. 1112, 1131 (2019). When the movant does not bear the burden of proof at trial, the movant is entitled to summary judgment if "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Gonzales v. ConocoPhillips Co.*, 806 F. App'x 289, 291 (5th Cir. 2020) (citing *Celotex*, 477 U.S. at 323). Once the movant has carried its burden, the nonmovant "must go beyond the pleadings and identify specific evidence in the record showing that there is a genuine issue for trial." *Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 307 (5th Cir. 2020). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Malbrough v. Stelly*, 814 F. App'x 798, 802 (5th Cir. 2020) (citing *Anderson*, 477 U.S. at 249-50). The Court need only consider the record materials cited by the parties. FED. R. CIV. P. 56(c)(3). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quotations omitted).

### SUMMARY JUDGMENT EVIDENCE

Plaintiff submits the following evidence in support of its Motion for Summary Judgment:

Exhibit A [Dkt. 16-1]: Insurance Policy #1000223291, issued by Meridian to Dhaliwal;

Exhibit B [Dkt. 16-2]: Dhaliwal's letter invoking/demanding Appraisal of his loss/damages associated with Claim #PR-0000000-238233 and February 7, 2019, date of loss;

Exhibit C [Dkt. 16-3]: Dhaliwal's Application for Appointment of Umpire, filed with the 16th District Court of Denton County, Texas (including attachments);

Exhibit D [Dkt. 16-4]: Order Appointing Britton Elliott as Umpire; and

Exhibit E [Dkt. 16-5]: Umpire's Appraisal Award.

Defendant submits the following evidence in opposition to the Motion for Summary Judgment and in support of its Contingent Motion to Set Aside the Appraisal Award:

Exhibit 1 [Dkt. 22-1 at 1-30]: Excerpts from the deposition of umpire Britton Elliot;

Exhibit 1-A [Dkt. 22-1 at 31-36]: Email chain among umpire Britton Elliott, appraiser Douglas Laczynski, and appraiser Brett Lochridge;

Exhibit 2 [Dkt. 22-2]: Excerpts from the deposition of appraiser Douglas Laczynski;

Exhibit 3 [Dkt. 22-3 at 1-18]: Excerpts from the deposition of Harminder Dhaliwal; Exhibit 3-A [Dkt. 22-3 at 19-24]: Texas Farmers Insurance Company Estimate dates March 21, 2016 for October 6, 2014 date of loss;

Exhibit 3-B [Dkt. 22-3 at 25-34]: Texas Farmers Insurance Company Claim Outcome Letter dated July 8, 2016 for March 23, 2016 date of loss.

Exhibit 4 [Dkt. 23]: Declaration of Sheryl Kao.

Defendant also relies upon Plaintiff's Second Amended Petition, and the exhibits thereto, as evidence in support of its Response [Dkt. 22 at 2-3].

***Defendant's Objection to Exhibits B, C, D, and E***

Defendant objects to Plaintiff's Exhibits B, C, D, and E [Dkt. 22 at 1]. No objections are asserted to Defendant's summary judgment evidence. The sum of Defendant's Objection to Exhibits B, C, D, and E is "they are not properly authenticated and thus not admissible summary judgment evidence" [Dkt. 22 at 1]. Plaintiff rejoins that Exhibits B, C, and D were initially submitted by and made part of the Court's record by Defendant, Exhibit E is an exhibit to the

deposition of Elliot, from which Defendant also submits excerpts and exhibits in support of its position on the pending Motions, and that any alleged authentication deficiency could be cured to become admissible at trial. *Patel v. Texas Tech Univ*., 941 F.3d 743, 746 (5th Cir. 2019) (citing *Maurer v. Indep. Town,* 870 F.3d 380, 384 (5th Cir. 2017)) (under the current version of Rule 56, "[a]t the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form."); *In re Eady*, No. 20-40208, 2021 WL 3148951, at \*7 (E.D. Tex. July 26, 2021) (citing *Lee v. Offshore Logistical and Transport L.L.C.,* 859 F.3d 353, 355 (5th Cir. 2017)).[1] The Court overrules Defendant's Objection.

### *Undisputed Facts*

Defendant issued a homeowners policy bearing Policy No. 1000223291, the Policy, to Plaintiff insuring Plaintiff's Property, the residence located at 5800 Southern Hills Drive in Flower Mound, Texas [Dkts. 16 at 1; 16-1 at 3]. The Policy covers losses caused by hail, wind, and damages to the residence subject to certain exclusions [Dkts. 16-1 at 55-59]. During the policy period, on February 7, 2019, Plaintiff alleges the Property was subjected to hail and/or wind damage from a storm [Dkts. 4 at 4; 22 at 2]. Plaintiff filed a claim with Defendant under the Policy, and Defendant subsequently inspected the Property.[2] The Parties disagreed regarding

---

[1] Rule 56 of the Federal Rules of Civil Procedure was amended in 2010. *See* 10A Wright & Miller, FED. PRACT. & PROC. § 2722 (4th ed. 2016),

> Prior to its amendment in 2010, Rule 56 required that a sworn or certified copy of any document referred to in an affidavit be attached to the affidavit. Indeed, it was recognized that an exhibit could be used on a summary-judgment motion only if it were properly made part of an affidavit.... However, when the rule was amended in 2010, the rulemakers omitted these specific requirements, and simply added to the list of appropriate materials 'documents.' As explained in the Committee Note, the requirements were viewed 'as unnecessary given the requirement in subdivision (c)(1)(A) that a statement or dispute of fact be supported by materials in the record.' Thus, although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible, the material may be presented in a form that would not, in itself, be admissible at trial.").

[2] No dates are specified in the pleadings as to when Plaintiff filed his claim or when Defendant inspected the property.

Defendant's evaluation and the amount of loss to the Property, and Plaintiff invoked "the appraisal process of our [P]olicy" [Dkt. 16-2]. The Policy's appraisal provision provides:

> **F. Appraisal**
> If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss. Each party will:
> 1. Pay its own appraiser; and
> 2. Bear the other expenses of the appraisal and umpire equally.

[Dkt. 16-1 at 61]. Plaintiff named Douglas Laczynski as his appraiser; Defendant's independent appraiser is Brett Lochridge [Dkts. 16-1 at 2; 4 at 134]. On June 24, 2019, Plaintiff filed an Application for Appointment of Umpire in the 16th Judicial District Court of Denton County, Texas, *In re: Policy of Insurance No. 1000223291 By and Between State Auto Insurance Company, Insurer and Harminder Dhaliwal, Insured*, Cause No. 19-5683-16 [Dkts. 16-3].[3] The next day, the state court appointed Britton Elliott ("Elliott") as umpire [Dkt. 16 at 4].

An appraisal was conducted, and, on October 5, 2019, Elliott issued his first "Umpire's Appraisal Award" finding in favor of Plaintiff in the amount of $183,468.82 RCV ("First Award") [Dkt. 4 at 136; 22-1 at 34]. On October 8, 2019, Defendant was provided notice of the First Award [Dkt. 22 at 3, 4 at 6]. Notably, two days prior, on October 6, 2019, Elliott advised the Parties' appraisers, via email, that the First Award was a mistake, withdrew the First Award, and provided

---

[3] On November 24, 2020, Plaintiff filed his First Amended Petition in the state court, identifying the defendant as State Automobile Mutual Insurance Company [Dkt. 3 at 1]. On December 22, 2020, Plaintiff filed his Second Amended Petition, the live pleading, wherein he removed State Automobile Mutual Insurance Company as a named defendant and named instead the current Defendant Meridian Security Insurance Company [Dkt. 4 at 1]. The Policy documents clearly establish that Defendant Meridian is the provider of Plaintiff's Policy.

a replacement estimate ("Second Award") [Dkt. 22 at 3]. Elliott's email withdrawing the First Award reads as follows:

> Gentlemen, My apologies but I must render my initial award a mistake. I inadvertently entered a line item that should not have been accounted for. Attached you will find my revised estimate and appraisal award.

[Dkt. 22-1 at 35]. The Second Award states that Elliot "hereby award[s] as the actual value of the property, from the damages occurring on or about the 7th day of February, 2019 and the amount of loss thereto by a hailstorm on that day, the following sums:" $143,705.38 RCV (and $120,106.50 ACV) [Dkt. 16-5 at 2]. The Second Award was provided to Defendant [Dkts. 16 at 4; 16-5 at 2; 22 at 3].

Defendant declined to pay the Second Award. Defendant, by letter dated November 7, 2019, informed Plaintiff of its "Coverage Decision" stating "you made two claims for the same damage with your prior insurer, Texas Farmers Insurance Company" "[w]e obtained the Farmers estimate from your prior claim. It is evident that your appraiser included damage that was previously estimated by Farmers and that occurred during your Farmers policy period…Likewise, the Appraisal Award signed by your appraiser and the umpire in the amount of $143,705.38 [the RCV from the Second Award] includes the same damage in the Farmers inspection photographs that was part of your prior Farmers claims" [Dkt. 4 at 161]. On March 7, 2016, Plaintiff submitted a claim for storm damage to the Property to his prior insurance carrier Texas Farmers Insurance ("Texas Farmers") for loss that occurred on or about October 6, 2014 [Dkts. 22 at 2; 22-3 at 19]. Texas Farmers covered the loss [Dkt. 22-3 at 4]. Subsequently, on June 27, 2016, Plaintiff again submitted a claim for storm damage to the Property to Texas Farmer's that occurred on or about March 23, 2016 [Dkts. 22 at 2; 22-3 at 25]. Texas Farmers did not cover this loss [Dkt. 22-3 at 25]. Plaintiff testified at deposition that he has never done any repairs to his roof in the 16 or more

years that he has owned the Property, and that he had not repaired the damage the subject of the two Farmers claims [Dkt. 22-3 at 5-6; 12-13].

## ANALYSIS

### *Summary of Grounds for Dismissal*

Plaintiff seeks summary judgment on the validity, amount, and binding nature of the Second Award, which Plaintiff asserts would resolve the issue of damages in the instant cause leaving only the question of coverage/liability.  In Response, Defendant's arguments are two-fold (1) Plaintiff's live pleading references the earlier, First Award, not the Second Award, thus "moving for summary judgment on the 'second award' is tantamount to bringing a new claim"; and (2) the Second Award is the result of accident or mistake and should not enforced or should be set aside.[4]

### *Challenge Regarding Plaintiff's Pleadings*

Plaintiff's Motion for Summary Judgment seeks a declaration that the Second Award is valid and binding and determines the amount of Plaintiff's loss/damage from the February 7, 2019, storm [Dkt. 16-5 at 2].  Defendant rejoins that Plaintiff is not entitled to summary judgment on the Second Award as Plaintiff's live pleading references only the First Award; thus, Plaintiff's requested relief amounts to a new or unpleaded claim [Dkt. 22 at 7].  "A Plaintiff may not raise a new claim in a brief at the summary judgment stage." *XL Specialty Ins. Co. v. Bollinger Shipyards, Inc.*, No. 12-2071, 2014 WL 994665, at *6 (E.D. La. Mar. 13, 2014) (citing *Gilmour v. Gates,*

---

[4] "A party seeking to set aside an appraisal award may amend the party's pleadings to assert that the trial court should set aside the award, move the trial court to set aside the award, or respond in opposition to a motion for summary judgment by asserting a ground for setting aside the award and raising a fact issue as to the ground." *Zhu v. First Cmty. Ins. Co.*, 543 S.W.3d 428, 433 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (citing *Nat'l Sec. Fire & Cas. Co. v. Hurst*, 523 S.W.3d 840, 844 (Tex. App.—Houston [14th Dist.] 2017, pet. denied)) (same).

*McDonalds & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).  The Court rejects Defendant's challenge regarding Plaintiff's pleadings.

Plaintiff's live pleading, the Second Amended Petition, admittedly attaches only the First, and not the Second Award, and references the RCV/ACV values from the First Award [Dkt. 4 at 6].  Notwithstanding, the Court finds Plaintiff sufficiently invokes the Second Award and Defendant was on notice that Plaintiff sought recovery under the same.  It is undisputed Elliot withdrew the First Award, and on that same date issued the Second Award.  Upon withdrawal, the First Award was superseded by the Second Award.  The Second Award was never revoked and is the only potentially binding appraisal award in existence.  Plaintiff's live pleading states in "October 2019, a binding Umpire's Appraisal Award was issued and subsequently signed by two of the three persons on the appraisal panel (the Umpire and one of the independent appraisers)" [Dkt. 4 at 6].  Such statement is true of both the First and Second Award.  Tellingly, though Plaintiff then incorrectly references/attaches the First Award, the live pleading goes on to reference an exchange of correspondence between the Parties related to the awards, which is likewise attached to the Second Amended Petition.  The attached November 7, 2019 letter from Defendant undoubtedly contemplates that Plaintiff's claim is made upon the Second Award—"the Appraisal Award signed by your appraiser and the umpire in the amount of $143,705.38 [the RCV value from the Second Award] includes the same damage in the Farmers inspection photographs that was part of your prior Farmers claims" [Dkt. 4 at 161].[5]

---

[5] The Fifth Circuit has explained that when a new claim is raised for the first time in a summary judgment brief, "the district court should construe that claim as a motion to amend the complaint under Federal Rule of Civil Procedure 15(a)."  *Laborde v. Northwestern Mut. Life Ins. Co.*, No. 16-0734, 2017 WL 11534271, at *2 (W.D. La. Sept. 8, 2017) (citing *Riley v. Sch. Bd. Union Par.*, 379 F. App'x 335, 341 (5th Cir. 2010)).  To be clear, even if the undersigned is incorrect in this finding, Plaintiff should be allowed the opportunity to amend to specifically invoke the Second Award. *Id.* (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981)) (finding that leave to amend should almost always be granted under these circumstances because "[u]nless there is a 'substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial.'").

*Consideration of the Second Award*

The remaining issue before the Court is whether the Second Award is valid and binding or a fact issue exists as to mistake. "Texas courts have long recognized the validity of appraisal provisions." *Studer v. Lloyds*, No. 4:13-cv-413, 2016 WL 4063782, at *4 (E.D. Tex. July 29, 2016) (Mazzant, J.) (citing *Hudgens v. Allstate Tex. Lloyd's*, No. H-11-2716, 2012 WL 2887219, at *8 (S.D. Tex. July 13, 2012)). Indeed, "[u]nder Texas Law, 'appraisal awards made pursuant to the provisions of an insurance contract are binding and enforceable, and every reasonable presumption will be indulged to sustain them.'" *Id.* at *4; *Park Bd. Ltd. v. State Auto. Mut. Ins. Co.*, No. 4:18-cv-00382, 2019 WL 7067135, at *3 (E.D. Tex. Dec. 23, 2019) (citing *JM Walker LLC v. Acadia Ins. Co*., 356 F. App'x 744, 746 (5th Cir. 2009)). "The effect of an appraisal provision is to estop one party from contesting the issue of damages in a suit on the insurance contract, leaving the only question of liability to the Court." *Franco v. Slavonic Mut. Fire Ins. Ass'n*, 154 S.W.3d 777, 786 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (citing *Wells v. Am. States Preferred Ins. Co.*, 919 S.W.2d 679, 683-85 (Tex. App.—Dallas 1996, writ denied)). Stated differently, appraisal awards do not serve to establish a party's liability, or lack thereof, but instead resolve the amount of the covered loss. *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 132 (Tex. 2019); *Hall v. Germania Farm Mut. Ins. Ass'n*, No. 07-16-00304-CV, 2017 WL 4630028 (Tex. App.—Amarillo Oct. 13, 2017, no pet.) (mem. op.) (noting that the effect of an appraisal award estops one party from contesting the issue of damages while leaving open the question of liability). "[T]he burden of proof lies on the party seeking to avoid the award." *TMM Invs. Ltd. v. Ohio Cas. Ins. Co.*, 730 F.3d 466, 472 (5th Cir. 2013) (citing *Franco*, 154 S.W.3d at 786); *Studer*, 2016 WL

4063782, at *4 (citing *Franco*, 154 S.W.3d at 786) (same); *Zhu*, 543 S.W.3d at 433 (citing *Hurst*, 523 S.W.3d at 844) (same).[6]

"Texas law recognizes only three situations that allow a court to set aside an appraisal award: '(1) when the award was made without authority; (2) when the award was made as a result of fraud, accident, or mistake; or (3) when the award was not in compliance with the requirements of the policy.'" *Mainali Corp. v. Covington Specialty Ins. Co.*, 872 F.3d 255, 258 (5th Cir. 2017) (citing *Franco*, 154 S.W.3d at 786)). Defendant argues the second exception is applicable, that the Second Award was made because of mistake. Specifically, Defendant asserts the Second Award contains acknowledged errors, "including: the overestimation of roof sheathing, inclusion of items such as pipe jacks and vent caps that had been previously paid as part of a prior insurance claim but never repaired, inclusion of AC condenser fins, inclusion of sales tax on labor or combined labor-and-material line items, inclusion of commercial sales tax" [Dkt. 22 at 4].

"Mistake applies when evidence establishes that the appraisers operated under a mistake of fact resulting in an unintended award." *United Fire & Cas. Co. v. Gossetts, Inc.*, No. 07-18-00204, 2019 WL 2572042, at *2 (Tex. App.—Amarillo June 21, 2019, no pet.) (citing *Abdalla v. Farmers Ins. Exch.*, No. 07-17-00020-CV, 2018 WL 2220269, at *3 (Tex. App.—Amarillo May 14, 2018, no pet.)); *JM Walker*, 356 F. App'x at 746 (quoting *Providence Wash. Ins. Co. v.*

---

[6] In *Garcia v Lloyds*, 514 S.W.3d 257, 265 (Tex. App. – San Antonio Dec. 14, 2016), cited by Plaintiff, the San Antonio Court of Appeals notes,

> although every reasonable presumption will typically be made in favor of an appraisal award, when reviewing a summary judgment, that rule must yield to the degree its application conflicts with the presumptions required to be made in favor of a summary judgment non-movant." *Wells v. Am. States Preferred Ins. Co.*, 919 S.W.2d 679, 683 (Tex. App.–Dallas 1996, writ denied); *Hennessey v. Vanguard Ins. Co.*, 895 S.W.2d 794, 798 (Tex. App.–Amarillo 1995, writ denied). Therefore, although Garcia had the burden to raise a fact issue on setting aside the appraisal award, we are required to view the summary judgment proof in the light most favorable to Garcia, as the non-movant, and to resolve against appellees any doubt as to the existence of a genuine issue of material fact on their estoppel defense. *Mays v. Foremost Ins. Co.*, 627 S.W.2d 230, 233–34 (Tex. App.–San Antonio 1981, no writ).

*Farmers Elevator Co.*, 141 S.W.2d 1024, 1026 (Tex. App.—Amarillo 1940, no pet.)) ("A court may set aside an award on the ground of mistake or accident only 'upon a showing that the award does not speak the intention of the appraisers.'"); *Garcia v. Lloyds*, 514 S.W.3d 257, 269 (Tex. App.—San Antonio 2016, no pet.) (citing *Providence Wash. Ins.*, 141 S.W.2d at 1026-27) ("Mistake in this context has a narrowly defined meaning: and actionable 'mistake' is one that caused an award to operate in a way the appraisers did not intend."). In *Barnes v. Western Alliance Insurance Company v. Western Alliance Insurance Company*, 844 S.W.2d 264 (Tex. App.—Fort Worth 1993, no pet.), the Fort Worth Court of Appeals defined "mistake" in its jury instructions as: "a situation where the appraisers and umpire were laboring under a mistake of fact by which their appraisal award was made to operate in a way they did not intend, such that the award does not speak the intention of the appraisers and the umpire[.]"

After reviewing the record evidence and applicable authority, the Court finds Defendant is not estopped from contesting the issue of damages in this suit. During deposition, Elliott and Laczynski both acknowledged (1) that if the Second Award included items upon which Plaintiff had previously made claims with Texas Farmers, inclusion of such items in an award would have been in error; and (2) the Second Award included incorrect tax items, which also constituted error.

As outlined *supra*, appraisal clauses "provide a means to resolve disputes about the amount of loss for a covered claim." *Tex. Windstorm Ins. Ass'n v. Dickinson Indep. Sch. Dist.*, 561 S.W.3d 263, 275 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (citing *In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 404,407 (Tex. 2011)) (appraisers may separate loss due to a covered event from a property's pre-existing condition). "However, appraisers are 'not to construe the policy or decide whether the insurer should pay.'" *Id.* (quoting *State Farm v. Johnson*, 290 S.W.3d 886, 890 (Tex. 2009)); *see also Reyes v. Southern Vanguard Ins. Co.*, No. 14-19-00728, 2020 WL

6741942 (Tex. App.—Houston [14th Dist.] Nov. 17, 2020, no pet.) ("Appraisal awards do not serve to establish a party's liability (or lack thereof)"). "Although the 'line between liability and damage questions may not always be clear, .... the scope of appraisal is damages, not liability.'" *Tex. Windstorm Ins. Ass'n*, 561 S.W.3d at 275 (quoting *Johnson*, 290 S.W.3d at 890). Because causation relates to both damages and liability, the Texas Supreme Court in *Johnson* provided general guidance for when an appraisal award should deal with questions of causation, finding it turns on whether "causation involved an issue of the amount of loss or damages (which is within the purview of appraisers) or an issue of liability turning on an interpretation of the policy (which is not within the purview of appraisers)." *Tippett v. Safeco Ins. Co., of Ind.*, No. 02-19-00152, 2020 WL 827143, at *11 (Tex. App.—Fort Worth Feb. 20, 2020, no pet.) (citing *Johnson*, 290 S.W.3d at 890-93). As a practical matter, therefore, "appraisers must always consider causation, at least as an initial matter." *Id.* (quoting *Johnson*, 290 S.W.3d at 893). "This role is dictated by the fact that '[a]n appraisal is for damages caused by a specific occurrence, not every repair a home might need.'" *Id.* (quoting *Johnson*, 290 S.W.3d at 893). "Any appraisal [thus] necessarily includes some causation element, because setting the 'amount of loss' requires appraisers to decide between damages for which coverage is claimed from damages caused by everything else." *Id.* (quoting *Johnson*, 290 S.W.3d at 893).

With the principles of *Johnson* in mind, the deposition testimony proffered reflects that the Second Award operates in a way that the umpire did not intend—including pre-existing damage, a fact of which the umpire was unaware, and incorrectly calculating or including certain tax line items. *See also In re Auto Club Indem. Co.*, 580 S.W.3d 852, 857 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (finding that it was in the appraiser's authority to determine "whether the damages they found were pre-existing or caused by pre-existing conditions," where the causation

question involved separating loss due to a covered event from a property's pre-existing condition); *see also Claffey v. State Farm Lloyds*, No. H-19-1296, 2020 WL 6128222, at *4 (S.D. Tex. Apr. 7, 2020) (quoting *Johnson*, 290 S.W.3d at 893) ("'[W]hen a causation question involves separating loss due to a covered event from a property- pre-existing condition,' appraisers must be able to allocate damages; otherwise, appraisal clauses would be 'largely inoperative.'"). Consider Elliott's testimony regarding pre-existing damage:

> Q.    All right. Well, assume with me that Dr. Dhaliwal did not make the repairs that you've looked at in the Farmers estimate. Okay?
> A.    So Dr. Dhaliwal did not make the repairs form the two Farmers estimates. Then – sorry. What was that exact question again?
> Q.    That shouldn't be included in your award, should it?
> A.    Oh.
> Q.    Because it's not from the date of loss?
> A.    I'd say that's fair.
> ….
> A.    If Dr. Dhaliwal swore that he did not do the repairs, then should they -- should those particular repairs been in my estimate and award? Probably not, should not have been a part of this loss.

[Dkt. 22-1 at 15:19-16:4, 25:2-25:5]. Plaintiff offers in response to these arguments that "Elliott, was merely responding to hypothetical questions posed and not referring to this case in particular" [Dkt. 24 at 16]. However, Plaintiff admitted in his deposition that he has never done any repairs to his roof in the 16 or more years that he has owned the Property, and that he had not repaired the damage related to the two previous Farmers claims [Dkt. 22-3 at 5, 8-13]. Here, the causation question involved separating loss occurring on the date of loss from a pre-existing event; or, stated differently, here, coverage or causation issues about which storm caused the damages overlap with issues about the amount of the loss. If appraisers were prohibited from distinguishing between storm damage and pre-existing damage, then appraisal clauses would become inoperative unless a roof was brand new and had no pre-existing damage. *Johnson*, 290 S.W.3d at 892-893. Standing

alone, the Second Award does not provide sufficient evidence from which a court may determine as a matter of law the issue of damages.

In addition, beyond the alleged pre-existing damage other errors exist, admitted to by all Parties; the Second Award contains incorrect tax line items.  Plaintiff's own appraiser, Laczynski, testified that the Second Award contains improper items which should not be part of the Second Award, referencing both those items also included in the Farmers' claims as well as certain tax line items [Dkt. 22-2 at 17:8-17-13, 18:9-18-22].  The easiest of these to distill here is the incorrect application of commercial tax.

> Q.    So all those items that are in the Farmers estimate that also appear in the umpire's estimate should not be included, correct?
> A.    Yeah…
>       ….
> Q.    Okay.  So is that a mistake to include that commercial tax there?
> A.    Yeah, probably.
> …
> Q.    Okay. If you had noticed that commercial sales tax line item on the award, would you have signed it?
> A.    It would have been an error.
> Q.    So is that a no, you would not have signed the  award if you had --
> A.     I –
> Q.    -- noticed it?
> A.    Yes.
> Q.    And we're speaking around each other and my poor grammar. So you would not have assigned -- okay. Excuse me. You would not have -- have signed the award had you noticed the commercial sales tax line item on the estimate, correct?
> A.    More than likely, yes.

[Dkt. 22-2 at 13:3-13:7, 17:8-17:10, 18:9-18:22].[7]  Elliott's deposition shows that he agreed with this finding as well,

> Q.    Would it be a mistake to include commercial tax in this estimate?
> A.    Probably.
> ….
> Q.    Okay.  So is that a mistake?
> A.    It should probably be rewritten for a different tax bracket.

[7] These are not all of the errors Defendant has alleged exist in connection with the Second Award.

> Q.     So is that a mistake?
> A.     Yes.
> ….
> Q.     Okay.  So Meridian should not pay for all that damage that was unrepaired that was part of the two Farmers claims, right?  We've already determined that?  Meridian should not be paying for commercial tax on your estimates correct?
> A.     That's correct.  The commercial tax is a mistake.

[Dkt. 22-1 at 19:10-19:13, 19:21-20:1, 21:21-22:2].  This conclusion is buttressed by Plaintiff's briefing which admits "both appraisers agree [the taxes were] included by oversight or error in the award" [Dkt. 24 at 16].  In *Gossetts, Inc.*, the Amarillo Court of Appeals recently reversed a jury verdict in favor of the insured on an appraisal award and rendered judgment in favor of the insurer on the issue of mistake.  *Gossetts, Inc.*, 2019 WL 2572042, at *3.  In so holding, the Amarillo Court of Appeals opined:

> The foregoing, and uncontested, evidence provides basis upon which a fact-finder could only reasonably infer the presence of a mistake of fact resulting in an unintended award. No doubt, the umpire and appraiser had the task of calculating the loss. So, they obviously intended to calculate the cost of repairing or replacing property covered by the policy and owned by the insured. Their calculation exceeded that purpose and intent due to their mistaken inclusion into their calculations the cost of repairing or replacing property that the insured did not own and that fell outside policy coverage.

*Id.* (emphasis added) (internal citations omitted).  Including the incorrect tax line items resulted in the appraisers "exceed[ing] the purpose and intent due to their mistaken inclusion."  *Id.*  As such, Second Award cannot as a matter of law establish the issue of damages.  Plaintiff urges that tax error can be corrected by merely amending the Second Award to remove parts from the award or add items to it [Dkt. 24 at 17].  However, Elliott in his deposition seemingly agrees the award could not be so simply recalculated, explaining that changes in the line items could result in extensive recalculations [Dkt. 22-1 at 10 (explaining that you can take a line item out "but the Xactimate program recalculates everything.")].  *See Id.*, at *1-2 (finding that merely removing the

line items from the award was not appropriate where "the umpire did not testify, nor did the record contain evidence, that the effect of the mistake was miniscule.").  Genuine issues of material fact exist regarding whether the award should be disregarded for mistake.  Thus, this Court must recommend Plaintiff's Motion for Summary Judgment be denied.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the Court recommends that Plaintiff Harminder Dhaliwal's Motion for Summary Judgment [Dkt. 16] be **DENIED**.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge.  28 U.S.C. § 636(b)(1)(C).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 19th day of August, 2022.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE